# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ARLENE J. PELLETIER,**

**Plaintiff,**

-vs-                                                      **Case No.  6:05-cv-637-Orl-18DAB**

**REEDY CREEK IMPROVEMENT
DISTRICT,**

**Defendant.**

---

## ORDER

THIS CAUSE comes before the Court upon Defendant Reedy Creek Improvement District's ("Defendant" or the "District") Motion for Summary Judgment with Supporting Memorandum of Law (Doc. 22, filed December 22, 2006) to which Plaintiff Arlene J. Pelletier ("Plaintiff") responded in opposition. (Doc. 30, filed January 24, 2007.)[1] Plaintiff brings this action against Defendant, asserting gender discrimination, hostile work environment sexual harassment, retaliation, and constructive discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). After reviewing the motions and memoranda submitted by the parties, the Court grants Defendant's motion.

---

[1] Plaintiff originally filed her response as Document 27 on January 22, 2007. However, that document did not comply with the signature requirement of Local Rule 1.5(d). Plaintiff subsequently filed another copy of her response, but it was not an accurate duplicate of Document 27. (Doc. 28, filed January 23, 2007.) Plaintiff finally filed Document 30 which does not alter the version filed as Document 27, except for being signed by counsel. Accordingly, the Court considers Document 30 as Plaintiff's response in opposition.

# I. BACKGROUND

Plaintiff, a female, was employed by Defendant in its Planning and Engineering Department (the "Department") as a Senior Planner from November 1, 1999 until her resignation on July 28, 2005. Defendant is a political subdivision of the State of Florida that provides various services to landowners and the public.[2] Plaintiff's direct supervisor throughout her employment was Kathryn Kolbo, Manager of the Department.

Defendant's Employee Relations Manual sets forth Appearance and Demeanor Standards (the "dress code"). Generally, the dress code requires that "all employees project a positive, professional and businesslike appearance." (Doc. 22-3 at 1.) Plaintiff has undergone between seven to ten breast augmentation surgeries, the majority of which she alleges were necessary to correct her severe congenital asymmetry. Between 2003 and 2005 Plaintiff gained approximately twenty-three pounds. Several of Defendant's employees claim that as Plaintiff's weight increased, "her clothes became tighter and increasingly more inappropriate." (Doc. 22 at 3.) Kolbo claims that she began noticing that Plaintiff's attire was inappropriate sometime during 2001 and that "[i]nitially, the inappropriateness of [Plaintiff's] attire was based on the fact that it was simply too tight. The clothing itself was not necessarily a problem, it was the fact that it just didn't fit." (Kolbo Dep. at 33:24-34:3.)

---

[2]For example, Defendant provides drainage and irrigation of land, water and sewer systems, waste collection, mosquito and other pest control, roads and bridges, emergency services, and land use regulation and planning.

In early 2004, Defendant began the process of revising its dress code and Kolbo engaged in lunchtime discussions with Plaintiff and other employees to discuss Defendant's expectations and updates regarding the dress code. Kolbo viewed the lunch discussions an opportunity to explain the dress code in an informal and non-confrontational manner. However, Kolbo denies that she specifically discussed Plaintiff's attire during these lunches.

On May 6, 2004, Plaintiff wore an ivory-colored dress that Kolbo claims was too tight and too short. Plaintiff admits the dress was not comfortable because it had shrunk. On May 7, 2004, Kolbo initiated a formal coaching and counseling session with Plaintiff to discuss her attire. Kolbo outlined specific items of clothing that Plaintiff wore that were inappropriate for Defendant's office environment. Specifically, Kolbo claims she explained to Plaintiff that

> her clothing should not be so tight as to reveal all the seaming of her undergarment. [Kolbo] explained that dresses and skirts needed to be long enough that you can sit, and they were still an appropriate and not overly-revealing length. And [Kolbo] told her that cleavage was never appropriate in an office environment and should not be exposed.

(Id. at 37:12-19.)

Plaintiff alleges that around October 2002, Kolbo had begun to make discriminatory comments about Plaintiff's large breast size and attire. Specifically, Plaintiff claims Kolbo told her other female employees were talking about Plaintiff's attire and large breasts and that Plaintiff's attire was being discussed during committee meetings to revise the dress code.

On May 20, 2004, Plaintiff filed a formal complaint with Defendant alleging that the dress code was enforced in an arbitrary and capricious manner; that she was being discriminated

against because she has large breasts; and that Defendant discriminated against females because no attention was given to male employees who wore ill-fitted pants. Defendant claims it investigated Plaintiff's complaint and determined that she had not been discriminated against or harassed. Plaintiff appealed the initial decision to Mickey Shiver, Deputy District Administrator, and then to Thomas DeWolf, the District's President of the Board of Supervisors. Thus, Defendant alleges that it conducted three independent investigations and in-person interviews and determined that Plaintiff had not been unlawfully discriminated against or harassed.

Plaintiff alleges that after she filed her complaint, her supervisors retaliated against her by making changes to one of her time sheets, harassing her about business lunches, reducing flexibility in her schedule, issuing a written reprimand for wearing a wrap around skirt, giving her a poor performance evaluation, and requiring that she perform duties that involved handling mosquito netting and chicken coops in remote areas of the District's property. Defendant alleges that Kolbo had held a Department-wide meeting to inform all the employees that they would no longer have flexibility in their work schedules. Kolbo also decided that all Department employees would have to perform fill-in duties to cover for the two employees who were usually responsible for mosquito control operations, including taking care of the chicken coops, chickens, and changing the mosquito netting.[3]

---

[3]Plaintiff alleges that as part of these duties, Kolbo asked her to pick up heavy bags of chicken feed. However, Plaintiff did not have to pick up the bags of chicken feed because Kolbo eventually assigned the task to another employee.

In addition, Plaintiff alleges that throughout her employment with Defendant, Ray Maxwell, District Administrator, leered at her breasts. Specifically, Plaintiff claims that Maxwell would stare "overtly, conspicuously, persistently, [and] pervasively" at her breasts. (Pl.'s Dep. 219:3-8.) Plaintiff admits, however, that in her initial complaint to Defendant, she did not indicate that Maxwell had leered at her breasts. (Id. at 227:23-228:1.) Plaintiff also alleges that Maxwell asked a consultant that worked at the District about his relationship with Plaintiff.[4]

On July 24, 2004, Plaintiff filed a claim with the U.S. Equal Employment Opportunity Commission ("EEOC"). Plaintiff continued to work for Defendant until July 28, 2005 when she tendered her written resignation, effective July 29, 2005. The resignation letter stated that Plaintiff's reasons for resigning were her "immediate and pressing concerns regarding [her] deteriorating health." (Id. at 50:14-20.) The EEOC issued its Notice of Right to Sue on March 2, 2005. Plaintiff subsequently initiated this action against Defendant (Doc. 1, filed April 28, 2005) and later filed an amended complaint. (Doc. 14, filed September 19, 2005.)

## II. DISCUSSION

### A. Summary Judgment Standard

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[4]Plaintiff acknowledges that Maxwell's inquiry occurred after she publicly kissed the consultant at the District's holiday party in 1999. (Id. at 208:2-209:4.)

matter of law." Fed. R. Civ. P. 56(c); see, e.g., Stachel v. City of Cape Canaveral, 51 F. Supp.

2d 1326, 1329 (M.D. Fla. 1999).  Material facts are those that may affect the outcome of the

case under the applicable substantive law.  Disputed issues of material fact preclude the entry

of summary judgment, but factual disputes that are irrelevant or unnecessary do not.  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of proving that no genuine issue of material

fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986).  In determining whether the

moving party has satisfied its burden, the Court considers all inferences drawn from the

underlying facts in a light most favorable to the party opposing the motion and resolves all

reasonable doubts against the moving party.  Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587-88 (1986).  The moving party may rely solely on the pleadings to satisfy its

burden.  Celotex, 477 U.S. at 323-24.  A non-moving party bearing the burden of proof,

however, must go beyond the pleadings and submit affidavits, depositions, answers to

interrogatories, or admissions that designate specific facts indicating there is a genuine issue for

trial.  Id. at 324.  If the evidence offered by the non-moving party is merely colorable, or is not

significantly probative, the Court may grant summary judgment.  Anderson, 477 U.S. at 249-50.

Similarly, summary judgment is mandated against a party who fails to prove an essential

element of its case.  Celotex, 477 U.S. at 322.

### B. Discrimination Claim

Plaintiff alleges that she "was treated differently than other female employees who wore the same or similar attire as Plaintiff" and that she was also "treated differently than male employees who wore tight fitting pants that 'highlighted' their genitals." (Doc. 14 at 3.) The relevant provision of Title VII makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.§ 2000e-2(a).

Absent direct evidence of discrimination, the plaintiff may prove intentional discrimination through the familiar McDonnell Douglas three-step burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). The initial burden is on the plaintiff to establish a *prima facie* case of discrimination by showing that: "(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) she was qualified for the job or job benefit at issue." Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 842-43 (11th Cir. 2000). If the plaintiff establishes a *prima facie* case of discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [employment decision]." McDonnell Douglas, 411 U.S. at 802. "If this is accomplished, the plaintiff may then attempt to demonstrate that the proffered reason was in fact merely a pretext for the defendant's actions."

-7-

Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1258 (11th Cir. 2001). Thus, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Id. (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). If the plaintiff fails to create a genuine issue of material fact on the question of whether the defendant's proffered reasons for the employment decision were pretext, the defendant is entitled to summary judgment. Rojas v. Florida, 285 F.3d 1339, 1344 (11th Cir. 2002).

Plaintiff must first establish a *prima facie* case. Defendant argues that Plaintiff has failed to establish the first element because she has failed to identify a protected class on which she bases her discrimination claim. (Doc. 22 at 16-17.) Plaintiff responds that

> [w]hile it is clear that [she] was treated differently as a result of her breast size, it is not the different treatment between her and her female co-workers upon which the gender discrimination lies, but instead it is predicated on the disparate treatment between herself as a female subject to the arbitrary and capricious [dress code] as applied when contrasted with equally situated males who were neither subjected to penalty by arbitrary application of such a dress code nor was it applied to males at all.

(Doc. 30 at 3-4.) To the extent that Plaintiff bases her claim on allegations that she was discriminated on the basis of gender, the Court agrees that Plaintiff, as a woman, is a member of a protected class. Plaintiff, however, has failed to establish that she suffered an adverse employment action and that similarly situated persons outside her class were treated more favorably.

Plaintiff claims the "resulting reprimand and subsequent retaliatory actions constitute adverse employment action." (Id. at 8.) Specifically, Plaintiff alleges that she was subjected to a coaching and counseling session, the alteration of her time sheet, the change in the business lunch policy, the change in schedule flexibility, a written reprimand, a poor performance evaluation, and a change in duties to include mosquito control and chicken coop duties.[5] (Id. at 13-18.)

To prove an adverse employment action, the plaintiff must show "a *serious and material* change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001). "[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Id. Indeed, the adverse action must be more than "some *de minimis* inconvenience or alteration of responsibilities." Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1453 (11th Cir. 1998). Specifically, the Eleventh Circuit has held that "negative job performance memoranda placed in [an employee's] file" and "changes in [an employee's] work assignments" that do not cause

---

[5]Plaintiff also contends that Defendant's refusal to increase her salary after she submitted a salary study is "relevant to her gender discrimination claim." (Id. at 7.) While Plaintiff does not specifically allege that Defendant's refusal to increase her salary on the basis of this study was an adverse employment action, Plaintiff claims her "pay [was] lagging behind the Orlando metro statistical area." (Pl.'s Dep. 124:6-13.) However, refusing to change Plaintiff's salary after she presented a salary study that allegedly indicated her pay rate was below other similar professionals in Orlando, is not the kind of action that is adverse for purposes of Title VII. Indeed, with the exception of one year that a pay freeze was in effect at the District, Plaintiff received annual raises throughout her employment. (Id. at 142:19-143:12.)

any "economic injury" to the employee do not constitute adverse employment action.  Davis, 245 F.3d at 1240.

Accordingly, the coaching and counseling session, written reprimand, poor performance evaluation, and alteration of job duties do not constitute adverse employment actions for purposes of Title VII.  None of these actions caused Plaintiff any economic injury, as neither her salary nor benefits were affected.[6]  Similarly, Plaintiff's claim regarding the alleged falsification of her time sheet does not rise to the level of adverse action required to establish a cause of action under Title VII.  Plaintiff admits that while Kolbo changed her hours on her time sheet for one week in June 2004, she received her full paycheck because she was a salaried employee.  (Pl.'s Dep. 384:21-385:5.)  Plaintiff contends, however, that Kolbo's actions resulted in her not receiving credit for hours worked and having hours deducted from her vacation time.  (Id. at 371:1-372:10.)  Plaintiff's allegation that her time sheet was changed by one hour on one occasion did not result in a "significant change in benefits."[7]  Thus, the alleged alteration of her time sheet is not an adverse employment action.

Plaintiff also claims that the changes to the business lunch policy and the reduction in schedule flexibility are adverse employment actions.  Plaintiff's job did not require that she

---

[6]Plaintiff admits that she received a raise after her allegedly poor performance evaluation. (Pl.'s Dep. 527:24-528:3.)

[7]At most, the alleged changes made by Kolbo to Plaintiff's time sheet resulted in a deduction of three hours of accrued vacation time.  (Id. at 384:9-10.)  This is simply not a "serious and material" change in the conditions or terms of her employment that would constitute an adverse employment action.

attend business lunches; rather, she took it upon herself to attend as part of her effort to do her job well. (Id. at 406:22-24.) While Plaintiff admits that she was not prohibited from attending business lunches, she alleges that Kolbo told her that business lunches "can't be counted as work." (Id. at 418:22-419:16.) The business lunch policy and schedule changes applied to the entire Department, and Plaintiff admits these changes did not impact her financially. (Id. at 425:24-15.) Thus, neither of these actions constitute a "serious and material" change in the conditions of Plaintiff's employment.

Even if any of these alleged actions constituted an adverse employment action, Plaintiff still fails to establish a *prima facie* case because she has not shown that similarly situated employees outside her class were treated more favorably. "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that [she] and the employees are similarly situated in all relevant respects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). This analysis requires a determination of "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Id.

Plaintiff alleges that Kolbo herself would dress in a manner that was inconsistent with Defendant's dress code, yet she was never reprimanded nor counseled. However, Kolbo, as a female, is not an employee who is outside of Plaintiff's class. Plaintiff also alleges that "men were routinely unchallenged concerning the same dress code." (Doc. 30 at 6.) Specifically, Plaintiff claims that "a number of male employees wore tight-fitting pants that highlighted their

genitalia." (Id.) Plaintiff admits that she never complained to Kolbo or any other supervisor

about men wearing tight-fitting pants. (Pl.'s Dep. at 340:24-341:7.) Indeed, Shiver never

witnessed any male employee wearing tight-fitting pants and never received any complaints

from other employees regarding tight-fitting pants. (Shiver Aff. at ¶¶ 10-11.) In addition,

everyone at the Department, male and female, was subjected to the other actions Plaintiff claims

are adverse. Thus, Plaintiff has failed to establish that similarly situated employees outside her

class were treated more favorably.

Even if Plaintiff had established a *prima facie* case, Defendant is still entitled to

summary judgment because Defendant has set forth legitimate, nondiscriminatory reasons for

its actions. The defendant's "intermediate burden is 'exceedingly light.'" Holifield, 115 F.3d

at 1564 (quoting Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994)). Thus,

to comply with Title VII, the defendant may base its employment decision on "a good reason,

a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is

not for a discriminatory reason." Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187

(11th Cir. 1984). Courts "are not in the business of adjudging whether employment decisions

are prudent or fair," but rather, their "sole concern is whether unlawful discriminatory animus

motivates a challenged employment decision." Damon v. Fleming Supermarkets of Fla., Inc.,

196 F.3d 1354, 1361 (11th Cir. 1999). Defendant has articulated that Plaintiff was not

complying with the dress code and that other employees were commenting about Plaintiff's

attire to Kolbo. (Doc. 22 at 2-5.) Defendant also claims that Kolbo is responsible for time

sheets and that she had personally observed Plaintiff away from her desk eating lunch for one hour on the date she changed Plaintiff's time sheet to reflect the hours she had actually worked. (Id. at 11.) Defendant also explains that its reason for requiring Plaintiff to perform other duties related to mosquito control and the chicken coops during the summer of 2004 was that the two employees who were typically responsible for performing these duties were on leave during this time and all of the employees in the Department had to fill-in and assist in performing other job duties. (Id. at 14.)  Thus, Defendant has fully met its burden of demonstrating legitimate, nondiscriminatory reasons for its actions.

Finally, Plaintiff has the opportunity to demonstrate that Defendant's articulated reasons for its actions are a "mere pretext for discrimination." Holifield, 115 F.3d at 1565.  In other words, "the ultimate issue in the case becomes whether the plaintiff has proven that the employer intentionally discriminated against [her] because of [her gender]." Id. This inquiry "centers upon the employer's beliefs, and not the employee's own perceptions of [her] performance." Id. Indeed, "[t]he factual issue to be resolved is not the wisdom or accuracy of [the defendant's] conclusion," but "[l]ike all Title VII cases where pretext is an issue, the question the factfinder must answer is whether [the defendant's] proffered reasons were a coverup for a . . . discriminatory decision." Rojas, 285 F.3d at 1342 (internal quotation marks omitted).  Moreover, "[j]udges are responsible for drawing the lines on what evidence is sufficient to create an issue on pretext." Id. at 1344.

In the present case, the only evidence of pretext is Plaintiff's own assertions that Kolbo "elect[ed] to reprimand [Plaintiff] on the pretext of applying this [dress] code." (Doc. 30 at 5.) Plaintiff attempts to support this assertion by alleging that Kolbo dressed in a manner that was inconsistent with the dress code. (Id.) However, Plaintiff's allegations are insufficient to create a genuine issue of material fact as to whether Defendant's reasons for its actions are a coverup for a discriminatory motive.

Accordingly, Defendant is entitled to summary judgment on the discrimination claim.

### B. Retaliation Claim

Plaintiff alleges that after she filed her complaint with Defendant, "Plaintiff's supervisors retaliated against her." (Doc. 14 at 3-4.) Title VII prohibits retaliation by providing that

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). In order to establish a *prima facie* case of retaliation, the plaintiff must prove the following elements: "(1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000). Just as with the discrimination claim, the McDonnell Douglas three-step burden-shifting framework applies.

-14-

Again, Plaintiff fails to establish a *prima facie* case because none of the allegedly retaliatory actions constitute adverse actions. The Supreme Court has stated that "[t]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2414 (2006). Accordingly, the "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 2415 (internal quotation marks omitted). However, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Id. The Eleventh Circuit has held that allegations that a plaintiff received extra work, was denied permission to train for and work on a new project, and was almost moved to a new building do not rise to the level of an adverse employment action for purposes of a retaliation claim. Tran v. Boeing Co., 190 Fed. Appx. 929, 934, n.3 (11th Cir. 2006). Similarly, the allegedly retaliatory actions claimed by Plaintiff simply do not rise to the level of actions that would dissuade a reasonable employee from making a complaint. The alteration of the business lunch policy, the alteration of the schedule flexibility policy, and the alteration of duties to include mosquito control[8] were

---

[8]In arguing that she suffered a retaliatory action, Plaintiff places a great deal of emphasis on the fill-in duties that included handling chicken coops and mosquito netting as part of mosquito control. (Doc. 30 at 17.) However, the "reassignment of job duties is not automatically actionable." Burlington N. & Santa Fe Ry. Co., 126 S.Ct. at 2417. In the present case, Plaintiff estimates that she was asked to perform these duties approximately ten times. (Pl.'s Dep. 288:19-289:3.) This was not

changes that applied to the entire Department and would not be considered "materially adverse" by a reasonable employee. Plaintiff's other allegations, the alteration of one time sheet, the written reprimand, and the poor performance evaluation, are also not "materially adverse" because they did not result in any injury or harm and instead, would fall into the category of "petty slights or minor annoyances."

Even if Plaintiff had established a *prima facie* case of retaliation, as stated above, Defendant has articulated legitimate, nondiscriminatory reasons for its actions. While Plaintiff has the opportunity to show that the reasons proffered by Defendant were mere pretext, Plaintiff has failed to create a genuine issue of material fact on the question of pretext. Here, the evidence shows that the policy changes and assignment of mosquito control duties applied to everyone in the Department, not just Plaintiff. Plaintiff's job description included "other duties as assigned," and everyone in the Department was asked to fill-in when the employees who regularly handled mosquito control were on vacation or absent for other reasons. (Shiver Aff. ¶¶ 21-22.) The evidence also shows that Kolbo, as manager of the Department, was responsible for enforcing the dress code and checking time sheets for any inaccuracies. (Pl.'s Dep. at 325:24-326:8, 385:17-21.)

Accordingly, Defendant is entitled to summary judgment on the retaliation claim.

---

a permanent change in Plaintiff's job position, but rather was an assignment pursuant to Plaintiff's job description as Senior Planner which included "other duties as assigned." (Shiver Aff. ¶¶ 21-22.)

*C. Sexual Harassment Hostile Work Environment Claim*

Plaintiff claims that she was sexually harassed by alleging that "Kolbo made repeated discriminatory comments to Plaintiff regarding Plaintiff's large breast size and attire that 'highlighted' her breasts and that she "was subjected to sexually explicit behavior and inquiries by [Maxwell.]" (Doc. 14 at 3.) In the Eleventh Circuit,

> [t]o establish a hostile-environment sexual-harassment claim under Title VII based on harassment by a supervisor, an employee must show: (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

In order to constitute unwanted sexual harassment, "statements and conduct must be of a sexual or gender-related nature—sexual advances, requests for sexual favors, [or] conduct of a sexual nature." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 583 (11th Cir. 2000) (internal quotation marks omitted). The comments allegedly made by Kolbo do not constitute unwanted sexual harassment. Plaintiff admits that she is the one who revealed to Kolbo and other women in the Department that she had undergone breast augmentation surgeries and that she never indicated that she did not want to discuss the topic. (Pl.'s Dep. 265:1-16.) Plaintiff also acknowledges that she does not believe Kolbo made comments "because she was attracted to [Plaintiff] sexually, nor making sexual advancements toward [her]." (Id. at 327:25-328:3.)

-17-

Indeed, Plaintiff admits that she had conversations with two other female co-workers about her breasts and breast augmentation surgeries and that they were not sexual discussions. (Id. at 332:4-16.)

To demonstrate that the harassment was "sufficiently severe or pervasive," the plaintiff must show that she "subjectively perceive[d] the harassment as sufficiently severe and pervasive to alter the terms or conditions of the employment, and this subjective perception must be objectively reasonable." Mendoza. 195 F.3d at 1246 (internal quotation marks omitted). Four factors should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. Moreover, "mere utterance of an . . . epithet which engenders offensive feelings in a [sic] employee does not sufficiently affect the conditions of employment to implicate Title VII." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (citation and internal quotation marks omitted).

The comments made by Kolbo were not sufficiently "severe or pervasive" to alter the terms and conditions of Plaintiff's employment. Plaintiff alleges that Kolbo made comments about Plaintiff's breasts approximately twenty times during lunches with other female co-workers and at Plaintiff's desk. (Id. at 261:21-262:8.) However, Plaintiff has not presented any evidence to create a genuine issue of material fact as to whether the comments allegedly made

by Kolbo were severe or pervasive to the point of altering the terms and conditions of Plaintiff's employment.

Similarly, Maxwell's conduct, even if assumed to be of a sexual nature, is not sufficiently "severe or pervasive" to create a hostile work environment. The Eleventh Circuit has emphasized that "Title VII is not a federal 'civility code.'" Mendoza, 195 F.3d at 1245 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998)). Specifically, the Eleventh Circuit stated that while "'following and staring' can betray romantic or sexual attraction, the everyday observation of fellow employees in the workplace is also a natural and unavoidable occurrence when people work together" and is "not sufficiently severe or pervasive to alter [the] terms or conditions of employment." Id. at 1248. The alleged leering by Maxwell was neither threatening nor humiliating and there is no evidence that Maxwell's alleged conduct interfered with or impaired Plaintiff's job performance. Moreover, the alleged one-time inquiry Maxwell made about Plaintiff's relationship with a consultant was not frequent, was not severe, and Plaintiff has not alleged that it interfered with her job performance. Thus, none of the alleged conduct or statements by Maxwell are sufficiently severe or pervasive to have altered the terms or conditions of Plaintiff's employment.

Accordingly, Defendant is entitled to summary judgment on the sexual harassment hostile work environment claim.

### E. Constructive Discharge Claim

Plaintiff alleges that "[a]s a result of the gender discrimination, hostile work environment and numerous retaliatory efforts taken against [Plaintiff], it became unreasonable for [Plaintiff] to remain causing her to be constructively discharged." (Doc. 30 at 22.) "A constructive discharge occurs when a discriminatory employer imposes working conditions that are 'so intolerable that a reasonable person in [the employee's] position would have been compelled to resign.'" Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003) (quoting Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997)). The Eleventh Circuit has stated that "[t]he standard for proving constructive discharge is higher than the standard for proving a hostile work environment." Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1282 (11th Cir. 2003).

Plaintiff emphasizes that "she could no longer endure the new and evolving retaliatory treatment [that] occurred after she had been requested to pick up heavy bags of chicken feed as part of her 'other duties as assigned.'" (Doc. 30 at 22.) Plaintiff acknowledges that she never had to pick up the chicken feed because Kolbo subsequently assigned someone else to do it. (Pl.'s Dep. 308:10-17.) Viewing the facts in the light most favorable to Plaintiff, the Court is unable to conclude that the working conditions imposed by Defendant were so unbearable that a reasonable person would have been compelled to resign. Additionally, as already demonstrated by the Court, Plaintiff has neither established a claim for discrimination nor for

hostile work environment.  Thus, Plaintiff has definitely not met the higher standard for constructive discharge.

Accordingly, Defendant is entitled to summary judgment on the constructive discharge claim.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED.** Document 27 and Document 28 are hereby **STRICKEN FROM THE RECORD.**  The Clerk of the Court is directed to **ENTER JUDGMENT** on behalf of Defendant and **CLOSE THE CASE**.

**DONE** and **ORDERED** in Orlando, Florida on this _____ day of April, 2007.

G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties